UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-60963-CIV-COHN/SELTZER

HILL YORK SERVICE
CORPORATION, d/b/a Hill York,

    Plaintiff,

v.

CRITCHFIELD MECHANICAL, INC.,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant Critchfield Mechanical, Inc.'s Motion for Partial Summary Judgment on Plaintiff's Damage and Breach Claims [DE 34] ("Motion"). The Court has carefully reviewed the Motion and all related filings and is otherwise fully advised in the premises.

**I.    Background**

    **A.    Material Facts**[1]

Plaintiff Hill York Service Corporation ("Hill York") is a "full service commercial HVAC company" that provides "systems maintenance, service, engineering, upgrades,

---

[1] In violation of this Court's Rules, Defendant's "Statement of Undisputed Facts," DE 34 at 1-12, is presented in an unbroken, narrative fashion and does not "[c]onsist of separately numbered paragraphs." S.D. Fla. L.R. 56.1(a)(3). Correctly noting that this unfocused factual statement is "difficult to respond to," Plaintiff offers a numbered "Counter Statement of Undisputed Facts" that does not correspond to the facts recited by Defendant. This Order uses both parties' filings to set forth the material facts and specifies when the parties' versions of key events differ. Also, the Court views the facts in the light most favorable to nonmovant Hill York and gives it the benefit of all reasonable inferences. See Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

and installations" for a broad range of commercial heating and cooling systems. DE 1 (Compl.) at 1, ¶ 1; DE 11 (Answer) at 1, ¶ 1. Defendant Critchfield Mechanical, Inc., ("CMI") is a "mechanical contractor that designs, fabricates and installs HVAC systems." DE 1 at 1, ¶ 2; DE 11 at 1, ¶ 2. During the time period relevant here, CMI served as a mechanical subcontractor on the Air Force Technical Applications Center project (the "Project") at Patrick Air Force Base in Florida. The Project involved the design and construction of four facilities: (1) a Headquarters Building, containing Area A (a one-level lobby and auditorium) and Areas B and C (four levels of offices and labs); (2) a two-story Process Support and Laboratory Building, known as Areas D and E; (3) a one-level central utility plant; and (4) a one-level underground utility vault.

In March 2012, CMI requested subcontract bids from Hill York and three other companies to install the chilled, heated, and condenser water-piping systems for equipment that CMI was to create and deliver for the Project. CMI sent to the potential bidders packages that included bidding instructions, plans and specifications, and an overall baseline construction schedule. The schedule reflected that the piping work would start in early June 2012 and would be finished by the third week in July 2013, excluding punch-list items. Among other details, the schedule specified when CMI would furnish major mechanical equipment, including air handling units to be set on the roofs and in the interiors of Areas B through E from November 2012 through April 2013. Following bid negotiations, in May 2012, CMI awarded the piping subcontract to Hill York at an original price of $3,550,000.00. Later-approved change orders increased the price to $3,740,408.00.

On the Project, Hill York employed union steamfitters to install the pipe, valves, fittings, and appurtenances to the CMI equipment. According to Hill York, though, CMI

delivered and installed the air handling units eight to nine months later than represented in the bid schedule.  The units for Areas B and C were set in August 2013, and those for Areas D and E were installed in September 2013.  More, Hill York claims that the units for the latter areas were misfabricated, incomplete, and contained radical design changes.  Some of these problems had to be fixed by the manufacturer's technicians throughout September 2013.  And Hill York allegedly spent September through December 2013 piping these units and making them functional on a trial-and-error basis, requiring thousands of man-hours and additional purchased materials.  Hill York finally completed the piping work and obtained conditioned air by the end of December 2013, incurring extra labor and material costs that Hill York estimates at over $500,000.00 its original budget amount.  Hill York further maintains that it never received advance notice from CMI about the late deliveries and equipment changes.

Also according to Hill York, the underground utility vault was scheduled to be available to start the piping work in June 2012.  The vault, however, was redesigned and not available until seven months later at the end of January 2013.  The central utility plant, which was to be fully completed in early 2013, had a floor failure that prevented Hill York from accessing that part of the plant for months until it was repaired.  Still more delays occurred in Areas B and C because CMI and other trades prematurely stored materials on the floors there, precluding Hill York from effectively using its equipment to install piping overhead.  Hill York contends that these problems, along with other substantial design changes imposed by CMI, "turned the pipe installation project from a planned productive job with at least a 16 % percent gross profit margin into a multimillion dollar loss, 'piecemeal,' 'service-call' type project for Hill York.  DE 40 at 8-9, ¶ 19.

Yet CMI offers evidence that Hill York caused significant delays on the Project. For example, CMI asserts that Hill York "did not have a detailer available for shop drawing and coordination at the beginning of its work." DE 34 at 7. So Hill York was often late in submitting its drawings, which lacked key information. CMI also maintains that, starting in late 2012, Hill York frequently had insufficient manpower to complete work that was available, causing its project manager to require overtime work. Too, CMI alleges that Hill York could not keep pace with the work schedule, lacked necessary materials, and damaged or lost materials that then had to be replaced. Among other issues, these problems required Hill York to pull up already-installed floor tiles to finish certain work. To complete its outstanding work toward the end of the Project, CMI claims that Hill York brought on more workers than could be supervised. Because these workers knew the Project was about to end, they were inefficient and even hid on the jobsite rather than being laid off. Last, CMI contends that although Hill York had substantially completed its subcontract work in December 2013, it performed an exorbitant amount—2,900 hours—of punch-list work in early 2014.

### B.    Procedural History

On April 23, 2014, Hill York brought this action against CMI. See DE 1 (Compl.). Hill York claims that CMI breached the parties' contract, in part by knowingly "failing to compensate Hill York for the impacts, inefficiencies of labor and extended performance due to changes in design, late equipment deliveries and limited access to work areas that Hill York encountered on the Project." Id. at 10, ¶ 44; see id. at 10, ¶ 43. In its Complaint, Hill York seeks to recover total damages of $2,728,371.00, including "Labor Costs" of $1,665,529.00 and "Material/Subcontract Costs" of $459,991.00. See id. at 9,

4

¶ 41; id. at 11, ¶ 48.  CMI answered Hill York's Complaint, denying liability and pleading various affirmative defenses.  See DE 11.

In its Motion, CMI argues that Hill York should not be allowed to present its alleged damages at trial using a "total cost" or "modified total cost" method.  See DE 34.  Hill York has filed a Response opposing the Motion, and CMI has replied.  See DE 40; DE 41.  Both parties have also filed supporting documentary evidence.

## II.    Discussion

### A.    Summary Judgment Standards

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To satisfy this burden, the movant must demonstrate that "there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

If the movant makes this initial showing, the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmovant "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial."  Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant

5

summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Essentially, so long as the nonmoving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker, 911 F.2d at 1577. If the evidence advanced by the nonmovant "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

A court's function at the summary-judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In so doing, the court must view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. See Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006). The court also must discern which issues are material: "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.

**B.   Analysis of CMI's Motion**

Among other claimed damages, Hill York seeks to recover the increased labor and material costs that allegedly resulted from CMI's delays on the Project. "The best proof of [a] delay claim is actual cost information taken from the [plaintiff] company's accounting books and records and accumulated in such a way that the damage

6

calculation presents a direct cost for each item of delay." Barry B. Bramble & Michael T. Callahan, Construction Delay Claims § 12.04 (5th ed. 2015).  Yet courts have recognized that, in certain limited situations, a contractor may prove delay damages through other methods that are less precise than showing specific increased costs. Among these methods are the "total cost" and "modified total cost" approaches:

> The modified total cost approach is a variation of the total cost approach.  Under the total cost approach, the original bid cost is subtracted from the actual cost of the entire project.  Essentially, the difference between the two amounts, after various modifications and adjustments, is the amount of damages incurred as a result of the owner or construction manager's breach.  The modified total cost approach allows for the adjustment of the amount calculated under the total cost approach to compensate for bid errors, specific costs arising from the subcontractor's actions, and specific costs arising from actions of parties other than the party against whom damages are sought.

Elec. Mach. Enters., Inc. v. Hunt Constr. Grp., Inc. (In re Elec. Mach. Enters., Inc.), 416 B.R. 801, 855 (Bankr. M.D. Fla. 2009), adopted in relevant part, 474 B.R. 778, 782-83 (M.D. Fla. 2012).

But using "either the total cost approach or the modified total cost approach requires establishing several specific elements." Id. at 893.  A jury may consider the total-cost approach "when the nature of the excess costs is such that there is no other practicable means of measuring damages, the original bid was realistic, the actual costs were reasonable, and the plaintiff is not responsible for any of the additional expense." Dep't of Transp. v. Hawkins Bridge Co., 457 So. 2d 525, 528 (Fla. 1st DCA 1984) (citing McDevitt & Street Co. v. Dep't of Gen. Servs., 377 So. 2d 191 (Fla. 1st DCA 1979)). The modified-total-cost approach imposes the same requirements, except that it subtracts any identifiable costs for which the plaintiff contractor is responsible.

See Elec. Mach. Enters., 416 B.R. at 893.  Thus, to establish the fourth element above, the plaintiff must show that it is "not responsible for any of the additional expenses, or has otherwise reasonably accounted for that portion of the total costs for which it is responsible."  Id. at 894; see 6 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner & O'Connor on Construction Law § 19:118 (2014) (explaining that the modified-total-cost approach "deducts from the contractor's total cost any losses incurred on segregated work activities for which the contractor, not the owner, was responsible").

Here, the parties' arguments focus on whether the modified-total-cost approach may be presented to the jury.  The parties dispute all four prerequisites for calculating damages on this basis.  Yet even if Hill York can show a genuine dispute of material fact on the first three elements, the record shows conclusively that Hill York cannot prove the fourth requirement—that it is "not responsible for any of the additional expenses, or has otherwise reasonably accounted for that portion of the total costs for which it is responsible."  Elec. Mach. Enters., 416 B.R. at 894.

On the last page of its Response, Hill York argues that even if it "was responsible for some of its costs, [that] would still not preclude use of the 'Modified Total Cost method' and a deduction for these minor isolated costs has been made, which is less than 1% of its total labor expended."  DE 40 at 29.  This deduction apparently involves labor that Hill York performed to correct specific piping issues.  See DE 40-4 at 23-24. But even viewing the facts in the light most favorable to Hill York, the record shows that Hill York was responsible for more cost overruns, aside from those purportedly caused by CMI's delays.  As discussed above in Part I.A, CMI has produced unrebutted evidence of several problems attributable solely to Hill York—for example:

- failure to have a detailer available for shop drawing and coordination at the start of the work, resulting in Hill York submitting drawings late and without proper detail;

- not bringing necessary materials and damaging or losing other materials;

- hiring more workers than Hill York could supervise, causing them to work slowly and hide on the jobsite; and

- performing an exorbitant amount of punch-list work after Hill York's regular work was substantially finished.

Hill York makes no effort to reasonably account for the added costs of these delays. Nor are the costs "isolated" or discrete items that can be readily quantified and subtracted from any damages award. Hill York therefore cannot show that damages may be fairly calculated here using a total-cost or modified-total-cost approach.

### III.  Conclusion

For the reasons discussed, it is hereby

**ORDERED AND ADJUDGED** that Defendant Critchfield Mechanical, Inc.'s Motion for Partial Summary Judgment on Plaintiff's Damage and Breach Claims [DE 34] is **GRANTED**. At trial, Plaintiff may not offer evidence of damages based on a "total cost" or "modified total cost" theory.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 29th day of January, 2015.

_____
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF

9